IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**BETTY HARRIS**                                                                              **PLAINTIFF**

v.                                            CIVIL ACTION NO.  3:16-cv-180-DPJ-JCG

**CAROLYN W. COLVIN,**
*Acting Commissioner of Social Security*                                    **DEFENDANT**

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), the claimant Betty Harris seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382c(a)(3). The Commissioner found that Harris was not disabled, as defined by the Social Security Act, despite her severe impairment of status-post mitral valve replacement. The Administrative Law Judge ("ALJ") determined that Harris could return to her past relevant work. The undersigned submits this Report and Recommendation to the District Judge and recommends that the Motion to Affirm Decision of the Commissioner (ECF No. 11) be DENIED and that the decision of the Commissioner be REMANDED.

## I. PROCEDURAL BACKGROUND

Harris was born December 20, 1960 and was forty-nine years old as of the alleged onset date. She completed high school in 1979. On May 25, 2010, Harris

filed an application for DIB and SSI, alleging disability beginning March 15, 2008.[1] Harris's last date insured for purposes of her application was June 30, 2015.

After Harris's claims were denied at the lower administrative levels, an ALJ heard Harris's case on October 18, 2012 and issued an unfavorable decision on October 26, 2012. On March 28, 2014, the Appeals Counsel remanded that decision to (1) "[g]ive further consideration to the treating source opinions of Dr. Lee," (2) "[o]btain additional evidence concerning [Harris's] impairments in order to complete the administrative record," (3) "[f]urther evaluate [Harris's] subjective complaints and….[e]valuate third party evidence," (4) "[f]urther evaluate [Harris's] mental impairments," and (5) "[g]ive further consideration to [Harris's] maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations." (ECF No. 8, at 100). The same ALJ held a second hearing on Harris's application on July 2, 2014 and issued a second decision unfavorable to Harris on October 24, 2014. Harris again requested review of the ALJ's decision by the Appeals Council.

On January 13, 2016, the Appeals Council denied Harris' request for review. This rendered the ALJ's October 24, 2014 decision the Commissioner's final decision, which is now subject to judicial review under 42 U.S.C. § 405(g).

---

[1] According to the brief in support of her complaint, Harris originally alleged an onset date of March 15, 2008, but later amended it to May 25, 2010. Harris further asserts that this new onset date was accepted by the ALJ at the initial hearing, but it does not appear to be acknowledged or reflected in the ALJ's final decision.

## II. HARRIS' MEDICAL HISTORY

A. Physical Impairments

Harris testified at the second hearing before the ALJ that she had open-heart surgery in 2008 and afterwards became disabled. (ECF No. 8, at 55). According to her medical records, "[Harris] underwent a mitral valve repair with intraoperative TEE[2]" by Dr. Gerhard H. Mundinger on November 12, 2008. *Id.* at 266. Harris was discharged from the hospital on November 17, 2008 and given special dietary instructions. *Id.* at 267. Dr. Mundinger saw Harris again at a follow up appointment on December 18, 2008. His notes from that visit state,

> Since her discharge from the hospital, she has continued to do well. She is still chronically plagued by one year of alopecia areata. Her medications are unchanged. Her blood work has been within normal limits according to the patient. I discussed with her the necessity of having antibiotics and dental cleaning, etc. She is sleeping well and denies any PND, palpitations or orthopnea.
>
> On physical examination, [her] blood pressure is 120/60 and pulse rate is regular. The vale sounds crisp with no evidence of perivalvular leak. She has good color. The sternal incision is well-healed. She has lost weight and no longer has the severe ankle and leg edema. She looks great and wants to return to work. I think she can do this, but she is restricted from lifting over 5 lbs until the first week of February.

*Id.* at 329. Harris' primary care physician, Dr. John Paul Lee, who had provided primary care to Harris prior to her surgery, continued to provide Harris with

---

[2] A "TEE" is a transesophageal echocardiogram, which is a test that utilizes ultrasound and an endoscope to create pictures of the heart's movement from inside the esophagus. *Transesophageal Echocardiogram (TEE)*, Cleveland Clinic (last reviewed Feb. 9, 2016), https://my.clevelandclinic.org/health/articles/transesophageal-echocardiogram-tee.

3

treatment following the surgery. Harris testified that she saw Dr. Lee both at his practice at Forest Family Practice Clinic and at the Baptist Church Medical Mission, where he volunteered. *Id.* at 60.

On October 6, 2010, Harris was seen by Dr. William M. Lewis for a consultative examination. Dr. Lewis noted that Harris "is able to ambulate about the clinic without apparent difficult and is able to get on and off the examination table without assistance." *Id.* at 406. He further noted that Harris "is able to flex her back such that her fingertips come to within about 3 [inches] of the floor and she is able to walk on her heels and toes. She is able to squat and recover but complains of pain when she does that." *Id.* at 406. Harris informed Dr. Lewis that she was no longer able to work because of leg swelling, shortness of breath, and chest pain. *Id.* at 404.

On November 28, 2013, Harris was admitted to Madison River Oaks Medical Center after fainting at a family gathering. *Id.* at 488; (ECF No. 10, at 8). She "presented…with acute onset of chest pain and recent syncopal episode at home in the presence of family members." (ECF No. 8, at 490). Harris was hospitalized for six days, during which time she was treated by Dr. Bethrone Mock-Muhammad and Dr. Steven Tincher. On December 1, 2013, Dr. Mock-Muhammad conducted a full cardiology consult. *Id.* His write up from that evaluation documents Harris' reported ailments, Harris' medical history, the results of numerous lab tests done on Harris, the results of a physical examination, and Dr. Mock-Muhammad's impressions and recommendations for treatment. *Id.* at 490-93. Dr. Tincher

discharged Harris on December 4, 2013, recommending that she seek follow up treatment from Dr. Lee. *Id.* at 485-87.

On October 22, 2014, Dr. Carol Kossman, a medical consultant for the Commissioner, completed a residual functional capacity assessment of Harris as part of Harris' disability determination. *Id.* at 409-16. Dr. Kossman found that Harris could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for a total of about six hours in an eight-hour workday, and also sit for six hours in an eight-hour workday. *Id.* at 410. Dr. Kossman concluded her report by stating that Harris's symptoms "preclude performing and sustaining any more than light work activity." *Id.* at 414.

B. Mental Impairments

The Office of Disability Determination Services referred Harris to see Dr. Joyce Cole-Marion, Ph.D. for a comprehensive mental status evaluation, which was conducted on October 28, 2010. *Id.* at 417. Dr. Cole-Marion noted no history of mental health treatment or use of psychotropic medications. *Id.* at 418. Dr. Cole-Marion concluded that

> [Harris] has minor adjustment issues due to her health condition. At this time, these issues do not appear to rise to the level of a clinical diagnosis. Ms. Harris has fair ability to maintain attention and concentration. Her ability to relate to coworkers is fair. Ms. Harris also has fair ability to respond appropriately to supervision. Her ability to deal with work stressors is fair. Ms. Harris is able to manage funds.

*Id.* at 419. Dr. Cole-Marion also estimated Harris's intelligence "to be within normal limits." *Id.* at 419.

On November 23, 2010, Dr. Amy Hudson, Ph.D., completed a psychiatric review technique form related to Harris' disability application. *Id.* at 421. Dr. Hudson noted a depressive syndrome characterized by "pervasive loss of interest in almost all activities," "appetite disturbance with change in weight," "sleep disturbance," and "difficulty concentrating or thinking." *Id.* at 424. Dr. Hudson noted that these symptoms created a mild degree of limitation on Harris's activities of daily living and a moderate degree of limitation on her maintaining social functioning and maintaining concentration, persistence, or pace. *Id.* at 431.

Dr. Hudson concluded that Harris had "[m]ild adaptive and moderate social and cognitive limitations due to depression" and that she "would be capable of performing routine, repetitive tasks without excessive interruptions from psychologically based symptoms." *Id.* at 433. On the same date, Dr. Hudson completed a mental residual functional capacity assessment of Harris, finding that Harris was only moderately limited or not significantly limited by her symptoms. *See id.* at 435-36. Dr. Hudson concluded that "[Harris] can understand and remember simple instructions and carry out these tasks. She can concentrate and attend for 2-hour periods, interact with supervisors and coworkers at a very basic level, and adapt adequately in order to complete a normal work week without excessive interruption from psychologically base symptoms." *Id.* at 437.

### III. THE ALJ'S FINDINGS

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The

burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). First, the claimant must prove she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities ...." *Id.* § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed in Appendix 1 of Subpart P to 20 C.F.R. pt. 404. *Id.* § 404.1520(d). Accordingly, if a claimant's impairment meets the requisite criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. *Id.* § 404.1525.

Fourth, the claimant bears the burden of proving she is incapable of meeting the physical and/or mental demands of her past relevant work. *Id.* § 404.1520(e). If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner at step five to prove, considering the claimant's residual functional capacity, age, education and past work experience, that she is capable of performing other work. *Id.* § 404.1520(f)(1). If the Commissioner proves that other work the claimant can perform exists (in significant numbers in the national economy), the claimant is given the chance to prove that she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In the instant case, the ALJ found at step one that Harris had not engaged in substantial gainful activity since March 15, 2008, the alleged onset date. At step two, the ALJ found that Harris had been suffering from the severe impairment of status-post mitral valve replacement during the relevant period. The ALJ also found that Harris's joint pain was not a severe impairment and that her depression was not a medically determinable impairment. At step three, the ALJ determined that Harris did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ determined at step four that Harris retained the residual function capacity ("RFC") to perform work at the light exertional level as defined in 20 C.F.R. Section 404.1567(b) with the following exceptions: "she requires a temperature-controlled work environment, free of pulmonary irritants and sheltered from direct sun, with no exposure to hazards, such as unprotected heights or moving machinery." (ECF No. 8, at 20). The ALJ found Harris' subjective complaints to be only partially credible, finding also that "the objective evidence of record does not support the extent and severity of limitations alleged by" Harris. *Id.* at 21-22. Accordingly, the ALJ concluded that Harris is able to perform her past relevant work as a convenience store cashier, which the Vocational Expert ("VE") classified as sedentary. *Id.* at 72-74. Having found Harris could perform her past relevant work, the ALJ did not reach step five.

IV. <u>DISCUSSION</u>

A. <u>Standard of Review</u>

Review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales,* 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)).

Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994); *Hollis v. Bowen,* 837 F.2d 1378, 1383 (5th Cir. 1988);

*Harrell,* 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994).

    B. <u>Analysis</u>

Harris makes two assignments of error in her brief: (1) the ALJ erred in failing to adequately address and accord weight to the opinions of Harris's treating physicians, Dr. Lee and Dr. Mock-Muhammad, and (2) the ALJ's decision is not supported by substantial evidence. Because the undersigned concludes that the ALJ erred in failing to consider the opinion of Dr. Mock-Muhammad, the undersigned need not reach the issue of whether the ALJ's opinion is supported by substantial evidence.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Kneeland v. Berryhill*, 850 F.3d 749, 759 (5th Cir. 2017) (quoting 20 C.F.R. § 404.1527(a)(1)); *see also* 20 C.F.R. § 416.927(a)(1).

The Fifth Circuit has made clear that "[m]edical opinions, especially conflicting medical opinions, must be considered." *Kneeland*, 850 F.3d at 759. Regulations governing the review of disability applications similarly provide that, "[i]n determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we

receive." 20 C.F.R. § 404.1527(b). "If any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have." 20 C.F.R. § 404.1520b.

It is long-standing Fifth Circuit precedent "'that ordinarily the opinions, diagnoses, and medical evidence of a treating physician[3] who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability.'" *Kneeland*, 850 F.3d at 760 (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)). Indeed, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [20 C.F.R. § 404.1527(c)(2)]." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir.

---

[3] Instead of treating physician, the federal regulations use the term "treating source":

> Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

2000). The failure to address a medical opinion in an ALJ's decision is an implied rejection of that medical opinion. *See Kneeland*, 850 F.3d at 759 (equating failure to discuss medical opinion with rejection of that opinion in its analysis); *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("[A]n ALJ…rejects a medical opinion or assigns it little weight [by] doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." (internal citation omitted)); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) ("The ALJ's failure explicitly to address Dr. Wright's opinion about Roddy's ability to work is especially troubling because Dr. Wright was Roddy's treating physician…. Even though the ALJ was not required to give Dr. Wright's opinion controlling weight, he was required to provide a sound explanation for his decision to reject it…." (internal citations omitted)).

The ALJ discussed Dr. Lee's medical opinion in detail, (ECF No. 8, at 24), but, as admitted by the Commissioner, the ALJ did not directly discuss Dr. Mock-Muhammad's opinion at all. (ECF No. 12, at 9). The undersigned finds that this failure to explicitly consider Dr. Mock-Muhammad's medical opinion constitutes remandable error.

The Commissioner attempts to draw some distinction between the apparent requirement that an ALJ consider every medical opinion and a requirement that the ALJ "evaluate" such opinions, but the Commissioner provides little support for this distinction. (ECF. No. 12, at 8). As evidence that the ALJ did consider Dr.

12

Mock-Muhammad's opinion, the Commissioner asserts (1) that "[t]he ALJ[] state[d] that she made her findings after careful consideration of the entire record," (2) that the ALJ "included Dr. Mock-Muhammad's treatment notes" as part of an exhibit in a list of exhibits she considered, and (3) that the ALJ considered medical opinions similar to those of Dr. Mock-Muhammad. (ECF No. 12, at 8-9).

The Commissioner cites *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010)[4] to support the Commissioner's proposed construction of the ALJ's opening statement that she considered all the evidence. In *Brunson*, the Fifth Circuit found that, because an ALJ's "decision states expressly that it was made '[a]fter careful consideration of all the evidence,'…we see no reason or evidence to dispute his assertion." *Brunson*, 387 F. App'x at 461. But the Fifth Circuit more recently held in *Kneeland v. Berryhill*, a published opinion, that "it should go without saying that cursory, boilerplate language about carefully considering the entire record does not constitute an explanation for rejecting a medical opinion." 850 F.3d at 761; *see also Gonzalez v. Colvin*, No. 4:14-cv-104, 2015 WL 1509497, at *6 (N.D. Miss. Mar. 31, 2015) ("'[B]oilerplate language fails to inform [the court] in a meaningful, reviewable way of the specific evidence the ALJ considered' in making a determination.") (quoting *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004)). Although the inclusion of Dr. Mock-Muhammad's treatment notes in the list of considered medical records may constitute some evidence that the ALJ

---

[4] The undersigned notes that the Court is not bound by unpublished opinions. *See Cavalier ex rel. Cavalier v. Caddo Parish School Bd.*, 403 F.3d 246, 257 (5th Cir. 2005). Under Fifth Circuit Rule 47.5.4, unpublished opinions after January 1, 1996 are binding only under the doctrines of res judicata, collateral estoppel, or law of the case. *Id.*

considered his opinion, this alone cannot bootstrap what is otherwise plainly inadequate evidence of such consideration; it does not satisfy the general rule that a medical opinion cannot be rejected without explanation.

The Commissioner cites *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994), for the proposition that "[t]he Fifth Circuit explicitly rejects rigid rules of articulation and has held that the ALJ does not have to specifically discuss all evidence that supports the decision or all evidence that was rejected." (ECF No. 12, at 9). In *Falco*, the Fifth Circuit declined to

> adopt the Third Circuit's rule that an ALJ must articulate specifically the evidence that supported his decision and discuss the evidence that was rejected[,] find[ing] that this rigid approach is unnecessary [because the Fifth Circuit has] nonetheless set [its] own strictures that…effectively reach the same result.

27 F.3d at 163 (internal citations omitted). The Fifth Circuit went on to hold that an "ALJ is bound by the rules of this Court to explain his reasons for rejecting a claimant's complaints of pain[,]" but that failing to "follow formalistic rules in his articulation compromises no aspect of fairness or accuracy that this process is designed to ensure." *Id.* at 164.

The Fifth Circuit has only twice discussed this holding in published opinions, both times noting its relevance to the ALJ's assessment of a claimant's subjective complaints of pain. *See James J. Flanagan Stevedores, Inc. v. Gallagher*, 219 F.3d 426, 430 n.8 (5th Cir. 2000) ("*Falco* involved a challenge to an ALJ's failure to make and articulate credibility findings regarding a social security claimant's subjective complaints of pain."); *H.B. Zachry Co. v. Quinones*, 206 F.3d 474, 480 (5th Cir. 2000)

14

(describing *Falco* as "a case dealing with subjective complaints of pain"). Because this case is not about a claimant's subjective complaints of pain, the Court cannot agree that it is proper to apply *Falco*'s holding; this is especially so in light of *Kneeland*'s clearly applicable mandates. *But see Acosta v. Astrue*, 865 F. Supp. 2d 767, 785 n.30 (W.D. Tex. 2012) (finding an ALJ's statement that he considered entire record sufficient and citing *Brunson* and another unpublished Fifth Circuit case relying on *Falco*).

Even though "less weight, little weight, or even no weight may be given to the physician's testimony" when good cause is shown, "the general rule [is] that rejecting a conflicting medical opinion nevertheless requires an explanation." *Kneeland*, 850 F.3d at 760-61 (quoting *Greenspan*, 38 F.3d at 237); *see also Loza v. Apfel*, 219 F.3d 376, 395 (5th Cir. 2000) ("The ALJ cannot reject a medical opinion without an explanation."). The *Kneeland* court made clear that "[t]he ALJ's root error was failing to address—or even mention—Dr. Bernauer's opinion in his decision." *Kneeland*, 850 F.3d at 761. This is because "an ALJ's failure to address an examining physician's medical opinion…makes it impossible to know whether the ALJ properly considered and weighed an opinion, which directly affects the RFC determination." *Id.* at 761-62. The failure to explicitly consider a medical opinion "result[s] in an RFC not based on substantial evidence." *Id.* at 759

> As in *Kneeland*, the undersigned must find that
>
>> the ALJ's decision does not comport with proper legal standards but [the undersigned is] not prepared to say whether the ALJ erred in [her] ultimate conclusion that [Harris] is not disabled. The ALJ must determine that on

15

> remand, upon completing a holistic evaluation of [Harris]'s impairments that takes into account the physical, cognitive, and psychological evidence and explaining what weight [she] affords the various medical opinions.

*Id.* at 762 (internal quotation marks omitted).

Lastly, the undersigned notes that the purported similarity of Dr. Mock-Muhammad's opinion to other evidence actually discussed by the ALJ cannot make up for the procedural flaws in the ALJ's opinion. "The [Commissioner], not the courts, has the duty to weigh the evidence, resolve material conflicts in the evidence, and decide the case." *Chaparro v. Bowen*, 815 F.2d 1006, 1011 (5th Cir. 1987). Even the existence of a conflict is within the Commissioner's domain to determine. *See Carry v. Heckler*, 750 F.2d 479, 484-85 (5th Cir. 1985) ("Whether or not we read the record as disclosing a conflict in the medical evidence concerning Carry's residual functional capacity, we think there was substantial evidence before the Secretary to justify the conclusion that Carry is capable of performing the full range of light work."). The Court cannot know how the ALJ might consider Dr. Mock-Muhammad's opinion, and it is not for the Court to guess.

## V. RECOMMENDATION

For the reasons stated, the undersigned United States Magistrate Judge recommends that the Motion to Affirm Decision of the Commissioner (ECF No. 11) be **DENIED** and the Commissioner's decision be **REMANDED**.

## VII. NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Automobile Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 18th day of July, 2017.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE